UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE GUEVARA-URAVAC, individually and on behalf of a class and collective of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SUSHI UKAI, INC., SUSHI UKAI II, INC., SUSHI UKAI III, INC., HONG WEN DONG, and HONG WU DONG, jointly and severally, <br><br> Defendants. | No. 24 CV 8728 <br><br> Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Sushi Ukai, Inc., Sushi Ukai II, Inc., and Sushi Ukai III, Inc. are corporations that own and operate three sushi restaurants in this District and are themselves owned by Hong Wu Dong and Hong Wen Dong. The Court will refer to the restaurants and their owners, collectively, as "defendants." Plaintiff Jose Antonio Guevara-Uravac alleges that when he worked as a kitchen helper at one of the restaurants, he and other employees worked more than 70 hours a week but were paid a flat salary despite being non-exempt employees under the Fair Labor Standards Act ("FLSA"). Guevara-Uravac sued on behalf of himself and other similarly situated employees, alleging that defendants violated both the FLSA and the Illinois Minimum Wage Law ("IMWL"), by failing to pay employees the minimum hourly wage required under Illinois law or provide overtime pay mandated by Illinois and federal law.

Guevara-Uravac now moves to certify a collective action under 29 U.S.C. § 216(b). [12]. For the reasons provided below, the motion is granted.

## I. Legal Standards

Employees may "bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). District courts have broad discretion to manage FLSA collective actions, *id.* at 449, but they "generally proceed under a two-step process," *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017) (cleaned up). In the first step, referred to as "conditional certification," employees must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Gomez v. PNC Bank, Nat'l Ass'n*, 306 F.R.D. 156, 173 (N.D. Ill. 2014) (cleaned up). Upon this showing, "courts may conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs." *Nicks*, 265 F. Supp. 3d at 849. "Courts apply the similarly situated requirement leniently and typically conditionally certify a representative class." *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 988 (N.D. Ill. 2018) (cleaned up).

At the same time, conditional certification is "not automatic and is not a mere formality." *Hannah v. Huntington Nat'l Bank*, Case No. 18-CV-7564, 2020 WL 2571898, at *6 (N.D. Ill. May 21, 2020) (cleaned up). The employee-plaintiffs must show "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation." *Nicks*, 265 F. Supp. 3d at 849 (cleaned up). This means that

plaintiffs "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co.*, Case No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (cleaned up).

At step one, district courts do not "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013). Step one thus requires only a "low standard of proof." *Id.* at 855.

## II. Background

Guevara-Uravac was employed by Sushi Ukai from June 15, 2023, to October 15, 2023, and then from February 1, 2024, to May 13, 2024. [9] ¶ 12; [12-2] ¶ 3. There are three Sushi Ukai restaurants in this District, and Guevara-Uravac worked as a kitchen helper at the La Grange, Illinois, location, where his duties included preparing food, cleaning the kitchen, washing dishes, bussing tables, and helping the chef. [9] ¶¶ 14–15, 17; [12-2] ¶¶ 7–8.

During his employment, Guevara-Uravac usually worked six days a week from 9 a.m. to 9:30 p.m., averaging 72 hours of work each week. [9] ¶¶ 18, 23; [12-2] ¶ 9. Guevara-Uravac was paid a flat amount regardless of the number of hours he worked: $1,300 every two weeks during his employment in 2023, and $1,500 every two weeks during his 2024 employment. [9] ¶¶ 21–22; [12-2] ¶¶ 11–13. This would mean that

his hourly pay averaged out to less than the minimum wage required by the IMWL during his entire employment.[1]

Guevara-Uravac alleges that defendants provided him with falsified paystubs stating that he worked 72 hours every *two weeks* rather than the 72 hours per week that he actually worked; as a result, the paystubs show him working less than 40 hours per week, the federal threshold for overtime pay. [9] ¶ 24. Guevara-Uravac thus also alleges that he was never paid overtime pay to which he was entitled by law.[2] *Id.*; [12-2] ¶ 14.

Guevara-Uravac, on behalf of himself and a putative class of restaurant workers, sued defendants, alleging that defendants' payment practices resulted in a failure to pay the Illinois minimum wage under the IMWL and failure to pay overtime under both the IMWL and the FLSA. [9] ¶¶ 38–50. Guevara-Uravac now moves to certify a collective action under 29 U.S.C. § 216(b), seeking to represent a collective of "[a]ll individuals employed by Defendants at any time since September 20, 2021, who were paid straight-time for one or more overtime hours." [12] at 2.

---

[1] For Guevara-Uravac's 2023 employment, $1,300 for 144 hours in a pay period would average to $9.03 per hour, less than the $13 per hour mandated by the IMWL in 2023. *See* https://labor.illinois.gov/content/dam/soi/en/web/idol/laws-rules/fls/documents/minimumwagehistoricrates.pdf. For his 2024 employment, $1,500 for 144 hours in a pay period would average to 10.42, less than the $14 mandated by the IMWL for that year. *Id.*

[2] In its response, Sushi Ukai does not dispute that Guevara-Uravac was a non-exempt employee entitled to overtime under the FLSA.

Two prospective opt-in plaintiffs[3] join Guevara-Uravac: Yberlin Guevara-Sanchez and Jesus Guevara-Munoz. *Id.* at 1. All three provide sworn declarations averring that they were jointly employed by the defendants. [12-2] ¶ 3; [12-3] ¶ 3; [12-4] ¶ 3. Guevara-Sanchez was a busser at the La Grange Sushi Ukai location, performing duties like cleaning tables, cleaning bathrooms, and washing dishes. [12-4] ¶¶ 7–8. Guevara-Munoz was a cook at the same location and also prepared side items, stocked items, and cleaned the restaurant. [12-5] ¶¶ 7–8. Like Guevara-Uravac, Guevara-Sanchez and Guevara-Munoz allege that they worked an average of 72 hours per week but were paid flat salaries that averaged out to less than the Illinois minimum wage and were not paid overtime. [12-2] ¶¶ 9–13; [12-3] ¶¶ 9–13; [12-4] ¶¶ 9–13.

Finally, Guevara-Uravac, Guevara-Sanchez, and Guevara-Munoz all attest that they have spoken to employees at the other restaurants and those employees told them "they have experienced the same pay practices" as Guevara-Uravac, Guevara-Sanchez, and Guevara-Munoz experienced at the La Grange location. [12-2] ¶18; [12-3] ¶ 17; [12-4] ¶ 18.

### III. Analysis

#### A. Collective Certification

At this early stage, Guevara-Uravac has met the "low standard of proof" required for stage one collective action certification. *Bergman*, 949 F. Supp. 2d at 855.

---

[3] One key difference between class actions under Federal Rule of Civil Procedure 23 and collective actions under § 216(b) "is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court." *Alvarez*, 605 F.3d at 448.

The three sworn declarations constitute sufficient "factual support outside of the complaint" to make the required "modest factual showing" of an "identifiable factual nexus." *See O'Neil v. Bloomin' Brands Inc.*, 707 F. Supp. 3d 768, 775–76 (N.D. Ill. 2023). As discussed below, defendants' arguments to the contrary are of no avail.

### 1. Sufficiency of Plaintiffs' Declarations

Defendants contend that the plaintiffs' declarations are "inaccurate and unreliable" because they are contradicted by Sushi Ukai's payroll records, are "virtually identical" to one another, and include hearsay. [27] at 3. But as already noted, in the two-step approach to collective-action certification used by courts in this District, "the merits of a case are not decided at the first step, and the Court does not 'weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant.'" *O'Neil*, 707 F. Supp. 3d at 776 (quoting *Hunter v. WirelessPCS Chicago LLC*, No. 18 CV 980, 2022 WL 864533, at *3 (N.D. Ill. Mar. 23, 2022)). Defendants rely on *Boyd v. Alutiiq Global Solutions, LLC*, *see* [27] at 3–4, but even *Boyd* instructs that "it would be improper to accept [Defendant's] evidence over conflicting evidence from the Plaintiffs," *see* No. 11-CV-0753, 2011 WL 3511085, at *4 (N.D. Ill. Aug. 8, 2011).

With respect to the issue of hearsay, as defendants acknowledge, "[t]here is a split amongst courts in this District on whether evidence contained within a declaration must be admissible for the purposes of conditional certification." *Heller v. Curaleaf Holdings, Inc.*, No. 22 CV 1617, 2024 WL 3201207, at *6 (N.D. Ill. June 27, 2024) (comparing cases). Given the "modest" evidentiary burden at step one—and the stricter burden at step two—the Court will join those courts that do not enforce

6

rigorous formality at conditional certification. *Id.* ("Given that courts should not evaluate the merits of a FLSA claim or delve into fact-based inquiries during the conditional certification stage, the Court will … permit inadmissible evidence at step one."); *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *3 (N.D. Ill. Feb. 28, 2019) ("[T]he Court will not require a strict application of the hearsay rule at this stage."); *Pieksma*, 2016 WL 7409909, at *3.

Defendants also contend that even if the declarations are admissible, they are inadequate because "[c]ourts in our District have held that a small sample of alleged FLSA violations 'does not rise to the level of a common policy or plan by [a defendant] that violated the FLSA.'" [27] at 7 (quoting *Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003)). *Flores* concluded that "a demonstration of Lifeway's payment practice concerning two out of fifty employees (four percent of Defendant's workforce)" was an insufficient factual showing. 289 F. Supp. 2d at 1046. "But *Flores* does not stand for the proposition that evidence coming from only 4% of the workforce is necessarily inadequate to show a common policy or plan." *Vega v. Cont. Cleaning Maint., Inc.*, No. 03 C 9130, 2005 WL 8177349, at *3 (N.D. Ill. Jan. 31, 2005). Rather, the issue in *Flores* was "the factual inadequacy of the affidavits" to establish a common policy, not the absolute number of affidavits. *Id.*; *Flores,* 289 F. Supp. 2d at 1046. The Court has already determined that the declarations in question are adequate under the low standard of proof required at conditional certification. And other courts have found a proportionally similar number of declarations was sufficient at step one. *Vega*, 2005 WL 8177349, at *3 (collecting cases).

7

### 2. Similarity of Plaintiffs

Defendants next argue that Guevara-Uravac is not a "proper class representative" for the proposed collective definition. [27] at 4, 9–11. Defendants first note that while Guevara-Uravac seeks to represent a collective across all three restaurants, he only worked at one. *Id.* at 9. Defendants contend that Guevara-Uravac is thus not similarly situated for the purpose of § 216(b) because "Ukai, Inc. is disparate from Ukai II and Ukai III." *Id.* at 9, 12. But, as discussed above, Guevara-Uravac and the opt-in plaintiffs have provided declarations stating that they spoke to employees at the other locations who reported experiencing the same unlawful pay practices as what the opt-in plaintiffs experienced at the La Grange location and that they were jointly employed by all three entities. The Court does not weigh evidence at this phase. Whether Guevara-Uravac and other plaintiffs were jointly employed by the defendants is thus a disputed question of fact appropriate to resolve at decertification or summary judgment, not conditional certification, and does not defeat certification at step one. *Nicks*, 265 F. Supp. 3d at 855 ("Given the factual issues involved, however, the joint employer question is typically addressed at the decertification or summary judgment stage.").

Next, defendants argue that "[t]here are significant factual inconsistencies about employment amongst the employees," such as how different Sushi Ukai locations handled timekeeping, the total number of hours worked by employees, different job titles and responsibilities, and how employees got to and from work. [27] at 10–12. But "plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay," *Jirak v. Abbott*

8

*Lab'ys, Inc.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008), and "[t]he determination of whether employees are similarly situated does not focus on their day-to-day work activities," *Slaughter*, 317 F. Supp. 3d at 990. The Court instead considers whether the named plaintiff and "potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores*, 289 F. Supp. 2d at 1045 (cleaned up). *See also Slaughter*, 317 F. Supp. 3d at 990 ("[A]rguments about dissimilarities in the class are more appropriate for step two of this process after discovery, rather than at this initial certification stage.").

Guevara-Uravac has satisfied this requirement under the "lenient[]" approach taken at conditional certification. *Id.* His proposed collective definition of employees "who were paid straight-time for one or more overtime hours" includes him and relates to the common policy alleged: that defendants paid non-exempt employees a flat salary instead of the overtime required by the FLSA. Defendants do not explain why something like different timekeeping practices at different locations or employee transit arrangements would preclude the existence of that common policy or put Guevara-Uravac outside of it, especially at this early phase of litigation.

Defendants rely primarily on *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759 (N.D. Ill. 2004), for their argument that Guevara-Uravac and other potential plaintiffs are not sufficiently similar, [27] at 10, but *Mielke* is significantly distinguished from the instant case. For example, the *Mielke* plaintiffs "acknowledge[d] that the reason Laidlaw failed to pay overtime was not based upon a single, uniform policy or decision," *id.* at 763 (cleaned up), whereas Guevara-Uravac

9

alleges a uniform policy across locations. Similarly, in *Mielke* "the eighty-four claimants work[ed] in thirty-eight [bus] terminals in twenty different states," with each terminal "operated by different local, autonomous managers and under different collective bargaining arrangements." *Id.* at 761, 763. By contrast, Guevara-Uravac and the opt-in plaintiffs declare they were jointly employed by defendants, who operate just three restaurants in three western Chicago suburbs. And defendants do not discuss at all the other two factors—"the existence of individualized affirmative defenses and fairness and procedural concerns"—that *Mielke* found relevant in rejecting the proposed collective action there. *Id.* at 763.

Guevara-Uravac has thus made the necessary "minimal showing that others in the potential class are similarly situated." *Id.* at 762.

### B. Proposed Notice Plan

#### 1. Form of Notice

Defendants make several objections to plaintiffs' proposed notice plan. With regard to the notice itself, defendants object that (1) the introductory text improperly creates the appearance of judicial imprimatur; (2) the notice begins with "oversized, bold, and underlined lettering, which rings of attorney solicitation"; (3) certain text in the notice ("If you do not join this case, you will not receive any money obtained by the Plaintiffs") is misleading because Guevara-Uravac is concurrently pursuing a class action under Federal Rule of Civil Procedure 23; and (4) the notice does not include "a statement that the court has not taken a position on the merits." [27] at 13–14.

The Court is untroubled by the first two concerns. In general, "[a]bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1139 (N.D. Ill. 2017). Language almost identical to that to which defendants object—"This Notice was authorized by the United States District Court, Northern District of Illinois"—has been found unproblematic by other courts in the district, *see, e.g., Boltinghouse*, 196 F. Supp. 3d at 843, and the Court similarly takes no issue with plaintiff's typographical choices, especially when the "oversized, bold, and underlined lettering" that concerns defendants is immediately followed by italicized and underlined lettering clarifying that "*This is not a solicitation from a lawyer*." [12-8] at 1 (emphasis in original).

The Court is also not concerned by the current text of the paragraph titled "What Is The Effect of Not Joining This Case." [12-8] at 3. While defendants are correct that Guevara-Uravac is concurrently pursing a Rule 23 class action, see [9] ¶¶ 23–37, that issue is not presently before the Court, and no Rule 23 class currently exists. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Rule 23 class action notice will be addressed if and when the Court certifies a Rule 23 class.

The Court does, however, agree with defendants that the notice's existing language stating that the Court has not taken any position on the merits (currently located in the third paragraph) should be moved to the first paragraph ("Why Have

11

You Received Notice") and appear in bold.[4] With that change, the form of the notice is approved.

Defendants also argue that notice transmitted by text would be "unnecessary and overly intrusive." [27] at 15 (citing *Slaughter*, 317 F. Supp. 3d at 994). But restaurant workers are the sort of "transitory" workers for whom notification via text message is "entirely appropriate." *Rosebar v. CSWS, LLC*, No. 18 C 7081, 2020 WL 43015, at *3 (N.D. Ill. Jan. 3, 2020); *see also Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022, 2018 WL 1934069, at *6 (C.D. Ill. Apr. 24, 2018) (text notification appropriate where "Defendants' work force is transitory"). The Court therefore grants Guevara-Uravac permission to send text notifications.

Defendants do not object to Guevara-Uravac's proposal that notice be posted in conspicuous areas of the restaurants or that opt-in class members be able to join electronically using SignNow. [30] at 1. The Court has no concerns with either proposal and will treat both as agreed upon by the parties.

Next, defendants request that the notice period be 60 days rather than the 90 days Guevara-Uravac requests because the shorter window "should benefit the class" by prompt[ing] quicker responses. [27] at 13 (citing *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010)). In particular, defendants note that § 216(b) collective actions do not toll the statute of limitations before for potential opt-in

---

[4] To be precise, the Court is referring to the following language: "The Court has not yet taken any position on the merits of Plaintiffs' claims or Defendant's defenses. This Notice is not an expression by the Court about the merits of this case, or whether Plaintiffs' claims will ultimately be litigated, tried on a class-wide basis, or prevail." [12-8] at 1–2.

12

plaintiffs, *id.,* something Guevara-Uravac acknowledges in his motion to certify the collective, *see* [12] at 6 ("[O]pt-in Plaintiffs face an eroding statute of limitations until they have such notice making it critical for the Court to afford notice at the earliest possible moment"); *see also Calloway v. AT&T Corp.*, 419 F. Supp. 3d 1031, 1035 (N.D. Ill. 2019) ("So even though the named Plaintiffs brought this collective action on behalf of all others similarly situated, the statute of limitations for these putative class members will continue to run until those employees actually opt in."). In response, Guevara-Uravac notes that the 90-day period is "customary" but does not otherwise explain why the additional 30 days would benefit potential plaintiffs, or why 60 days would be inadequate to provide notice to the expected collective. Because of the "eroding statute of limitations" faced by potential plaintiffs, the notice period will be 60 days.

Defendants also request that notice be sent as a .pdf attachment instead of as text that can be more readily manipulated. [27] at 13. Because Guevara-Uravac does not object to defendants' request, the Court orders notices to be sent via .pdf files.[5]

Finally, defendants object to Guevara-Uravac's proposal to send a reminder notice halfway through the opt-in period. [27] at 14. In his reply, Guevara-Uravac "offer[s] to forego a remainder notice, in exchange for being able to use text messages as a method of notification." [30] at 7. The Court will take Guevara-Uravac up on that offer: because Guevara-Uravac may use text messages as a method of notification, the Court does not authorize a reminder notice.

---

[5] It is the Court's understanding that .pdf files can be sent via both email and text message.

13

### 2. Contact Information

Guevara-Uravac requests that the Court order defendants to provide a list of employees from all three Sushi Ukai locations since September 20, 2021, as well as confer with all employees and obtain current phone numbers, mailing addresses, and e-mail addresses. [12] at 12. For their part, defendants say that "any class-wide contact information should be limited to the last known address and email address and phone number." [27] at 13. Plaintiffs do not explain why defendants should have to confer with current employees to obtain current their contact information; presumably defendants already have that information as they would use it to, for example, handle scheduling. Defendants also request that contact information be produced subject to a confidentiality order, *id.*; Guevara-Uravac has not objected to that request.

The Court orders defendants to produce a list of all Sushi Ukai employees (at any of the three location) since September 20, 2021, with their last known contact information. More specifically, defendants are instructed to provide Guevara-Uravac with the following information regarding all potential class members: last known address(es) with city, state, and zip code; last known email address(es); last known mobile telephone number(s); beginning date(s) of employment; and ending date(s) of employment (if applicable). This production should take place within 14 days after a confidentiality order is entered.

## IV. Conclusion

For the above reasons, Guevara-Uravac's motion for conditional certification [12] is granted. The Court authorizes Guevara-Uravac's proposed notice plan with

14

the aforementioned modifications and directs the production of contact information, as outlined above, within 14 days after a confidentiality order is entered. Counsel are to confer and submit an agreed protective order within 10 days of this order.

_____
Georgia N. Alexakis
United States District Judge

Date: 3/26/25